IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| JOSEPH PAVLIK and DONNA SMITHEY on behalf of themselves, Universal Federal, and a class of FDIC certified Universal Federal claimants, <br><br> Plaintiffs, <br><br> v. <br><br> FEDERAL DEPOSIT INSURANCE COMPANY in its Corporate and Receivership Capacity, ADAM RESNICK, <br><br> Defendants, <br><br> and <br><br> THE ESTATE OF UNIVERSAL FEDERAL BANK, <br><br> Nominal Defendant. | Case No. _____. |

**CLASS ACTION AND VERIFIED DERIVATIVE ACTION COMPLAINT**

Plaintiffs Joseph Pavlik and Donna Smithey, on behalf of themselves, the now defunct Universal Federal Bank, a mutual bank owned by its depositors and a class of FDIC-certified Universal Federal claimants, bring this hybrid class and derivative action against the Federal Deposit Insurance Company in its corporate and receivership capacity, and Adam Resnick, in connection with proceeds from Defendant Resnick's restitution order.

**NATURE OF THE ACTION**

1. Plaintiffs bring this action to force the FDIC to (i) pay former depositors the remaining unpaid portions of their Universal Federal Bank deposits in excess of $100,000.00

1

from Defendant Resnick's *qui tam* settlement; (ii) pay creditors pursuant to 12 U.S.C. 1821's priority scheme; (iii) and return all profits gained from Defendant Resnick's restitution to the bank's depositors, as the mutual owners of the bank. All of these individuals and entities are FDIC-certified claimants, meaning that the FDIC has already admitted the claimants' statutory rights to the money. This is a hybrid action brought derivatively by Universal Federal Depositors on behalf of FDIC certified Universal Federal Bank claimants.

## JURISDICTION AND VENUE

2. <u>Jurisdiction</u>: Subject matter jurisdiction is proper: under 28 U.S.C. §1331 because this case arises under a federal law; and the FDIC can be sued in any court, state or federal pursuant to 12 U.S.C. § 1819. Personal Jurisdiction is proper because Defendant FDIC has offices in this judicial district. In addition, upon information and belief, Defendant Resnick resides in this judicial district and/or has submitted to this district's jurisdiction for his criminal case, 05-cr-0009.

3. <u>Venue</u>: Venue is proper in this Court pursuant to 28 U.S.C. §1391(a) because one or more of the Defendants either resides in or maintains executive offices in this District, and a substantial portion of the transactions and wrongs that are the subject of this complaint, including Defendant Resnick's check-kiting scheme and the FDIC's takeover of Universal Federal (formerly located at 1800 S. Halstead Street, Chicago, IL 60608) occurred in substantial part in this District.

## PARTIES

4. Plaintiff Joseph Pavlik is a citizen of Illinois and a former depositor of Universal Federal Bank. Plaintiff Pavlik was a depositor before and during the time of the FDIC's

2

takeover of Universal Federal. His deposit was over $100,000.00, for which he has not received his entire deposit back.

5. Plaintiff Donna Smithey is a citizen of Illinois and owner of Building Solutions Chicago, L.L.C., which was a depositor of Universal Federal Bank. Building Solutions Chicago L.L.C.'s deposit was over $100,000.00, and it did not receive its entire claim. Plaintiff Smithey, through Building Solutions Chicago was a depositor before and during the time of the FDIC's takeover of Universal Federal.

6. Defendant, the Federal Deposit Insurance Corporation is an independent agency created by the Congress to maintain stability and public confidence in the nation's financial system by: 1) insuring deposits; examining and supervising financial institutions for safety and soundness and consumer protection; and 3) managing receiverships.

7. Defendant Adam Resnick is a citizen of Illinois, residing at 206 Taylor Court, Buffalo Grove, IL 60089, and was an authorized check-signer at an accounting firm that dealt with Universal Federal, and engaged in a check-kiting scheme that led to Universal Federal's collapse.

8. Nominal Defendant Universal Federal Bank was a mutually owned, federally insured banking institution that collapsed and was taken into receivership from the FDIC.

## BACKGROUND

9. In 2001, Defendant Resnick perpetrated a fraud that led to the FDIC's takeover of Nominal Defendant Universal Federal Savings Bank. Universal Federal Savings Bank ("Universal") was a federal savings bank located at 1800 South Halsted Street, Chicago, Illinois. The deposits of Universal were insured by the Federal Deposit Insurance Corporation. Universal was a small financial institution that began operating in 1923 and served the needs of residents in

the Pilsen community in Chicago from 1923 until it was closed by the FDIC in June 2002. (Plea Ag. p. 3)

10. Defendant Resnick's plea agreement, attached hereto as Ex. A, details Defendant's check-kiting scheme and his gambling away of Universal's depositors' money in casinos in Hammond Indiana, and Las Vegas, Nevada. (Plea Ag. p. 6)

## FACTUAL ALLEGATIONS

11. Plaintiffs seek to force the FDIC to pay Defendant Resnick's restitution payments pursuant to 12 U.S.C. §1821's priority schedule, which mandates that the FDIC distribute Defendant Resnick's restitution as follows:

> 1) depositors' claims in excess of $100,000.00;
>
> 2) Universal Federal's creditors, including retirees; and
>
> 3) all additional proceeds to Universal Federal's depositors who were mutual owners of Universal Federal at the time the bank went into receivership.

**A.  Defendant Resnick Defrauds Universal Federal and its Depositors**

12. According to Defendant Resnick's plea agreement, beginning on or about December 13, 2001, and continuing thereafter until on or about June 25, 2002, Defendant Resnick engaged in a check kiting scheme between the Navarro, Elisco and Associates, (his employer) (NEA) account at Universal, and Universal's correspondent account at American National Bank and Trust Company (ANB), which caused Universal and ANB to suffer a loss in excess of $10 million. (Plea Ag. p. 3-7)

13. Specifically, Defendant Resnick and his eventual co-defendant (in a criminal case) Antonette Navarro (head of Universal Federal) agreed that Defendant Resnick would make deposits into Universal's account at ANB and communicate the amounts of the deposit by

telephone to Navarro at Universal, and that Navarro would cause the total amount reported by Defendant Resnick to be credited immediately to NEA's account at Universal, and would make the total amount reported by Defendant Resnick immediately available for the use of Defendant Resnick and other signers on the NEA account. (Plea Ag. p. 5)

14. Defendant Resnick took advantage of this arrangement to engage in a check-kiting scheme between the NEA account at Universal and Universal's account at ANB. Defendant Resnick wrote Non-Sufficient Funds (NSF) checks on the NEA account, deposited those NSF checks in Universal's correspondent account at ANB, received immediate availability of those funds in NEA's account at Universal, withdrew some or all of the immediately available funds, and then covered the previous NSF checks plus the withdrawn funds by depositing even larger amounts of NSF checks drawn on NEA's Universal account into Universal's correspondent account at ANB. This cycle continued almost daily for more than six months. (Plea Ag. p. 5)

15. Indeed, Defendant Resnick made approximately 138 fraudulent deposits into the Universal account at ANB for the purpose of creating fraudulently inflated balances in the NEA account at Universal. These fraudulent deposits included more than $200 million in NSF checks drawn on the NEA account at Universal, and Defendant Resnick used the fraudulent balances in the NEA account to write checks to third parties, and to pay for wire transfers to online gambling businesses and casinos in Hammond, Indiana and Las Vegas, Nevada. Defendant Resnick also occasionally deposited into the Universal account at ANB, and the NEA account at Universal, monies, in the form of cash and checks, that represented amounts won by him from gambling. (Plea Ag. p. 6)

16. Defendant Resnick's scheme was only uncovered after the Chairman of Universal Federal asked for check copies (which Resnick falsified) and eventually discovered the massive fraud, leading to the FDIC's takeover. (Plea Ag. p. 6-7)

### B. Defendant Pleads Guilty and is Sentenced to Prison and Ordered to Pay Restitution

17. On January 16, 2007, District Judge Wayne Andersen sentenced Defendant Resnick to forty-two months in prison and restitution of approximately $10 million. Further, the sentencing order mandates that "any financial penalty that is imposed by this judgment and that remains unpaid at the commencement of the term of supervised release on a monthly payment schedule of 10% of his net monthly income." (05-cr-0009; Dkt. 79)

18. According to the Restitution Order, Defendant Resnick owes the FDIC $9,750,545.60. The FDIC, however, owes this money to Universal Federal's former depositors and constituencies outlined in 12 U.S.C. §1821.

### C. Defendant's Information Leads to a Recovery in a *Qui Tam* Action

19. Subsequent to his dealings with Universal Federal, but prior to being indicted, Mr. Resnick secured employment as a consultant at a company called U.S. Pharmacy. According to a motion filed in 05-cv-0009, during his time at U.S. Pharmacy, Defendant Resnick became aware of significant heath care fraud and brought the information to the attention of the Chicago United States Attorney's Office and Chicago FBI Office, which elected not to investigate that case.

20. Ultimately, Defendant contacted Phillips & Cohen LLP, who was willing to take the case as a *qui tam* action for which Mr. Resnick was to serve as relator.

21. In November, 2009, $19.875 million dollars was collected from Omnicare Inc. to settle the *qui tam* action for which Mr. Resnick served as relator and in which the United States

Attorney's Office eventually intervened for the government. Another set of defendants in the same *qui tam* action were in settlement negotiations which may result in an additional significant payment being made to the federal government in connection with this *qui tam* action

22. Pursuant to federal law, Defendant Resnick is legally entitled to share in the award and will reap $2,000,000.00 as part of the *qui tam* award.

### D. FDIC Terminates Receivership Despite Recognizing that Resnick's Restitution was Possibly Forthcoming

23. On November 15, 2007, despite still owing money to depositors, and ignoring the depositors' interest in the corpus of the former Universal Federal, including the unpaid restitution award, the FDIC terminated the Universal Federal receivership, knowing that there may be restitution paid to it on behalf of Defendant Resnick. Indeed, the FDIC, on its Universal Federal information page misstates that it made all dividend distributions required by law, and in fact shows that depositors have still not been even made whole for their deposit losses.

24. The FDIC's termination of the Universal Federal receivership left numerous depositors and creditors unpaid. Indeed, at the time that the receivership's termination, upon information and belief, hundreds of thousands of dollars were left to be paid to uninsured depositors, not to mention any profits received from Resnick's restitution.

25. As the case currently stands, unless this Court acts, the restitution paid by Defendant Resnick will flow to the FDIC entirely in its *corporate* capacity, without consideration to the depositors and other rightful claimants.

### E. The FDIC Obtains A Judgment of $848,197.63 against Domenic Poeta

26. In addition to Defendant Resnick's *qui tam* proceeds, the United States obtained a judgment for Universal against third-party Domenic Poeta, who was a bookie that received significant sums of money from Defendant Resnick.

7

27. This $848,197.63 belongs to the depositors of Universal Federal.

28. On February 2, 2010, this judgment was affirmed by the United States Court of Appeals for the Seventh Circuit. *See United States v. Resnick*, No. 08-4039, 2010 WL 346222 (7th Cir. February 2, 2010.)

### F. Federal Law Requires the FDIC to Pay Depositors First

29. Under Section 12 U.S.C. §1821(d), depositors are the first priority after administrative expenses:

> (11) Depositor preference
>
> (A) In general
>
> Subject to section 1815(e)(2)(C) of this title, amounts realized from the liquidation or other resolution of any insured depository institution by any receiver appointed for such institution shall be distributed to pay claims (other than secured claims to the extent of any such security) in the following order of priority:
>
> **(i)** Administrative expenses of the receiver.
>
> **(ii)** Any deposit liability of the institution.
>
> **(iii)** Any other general or senior liability of the institution (which is not a liability described in clause (iv) or (v)).
>
> **(iv)** Any obligation subordinated to depositors or general creditors (which is not an obligation described in clause (v)).
>
> **(v)** Any obligation to shareholders or members arising as a result of their status as shareholders or members (including any depository institution holding company or any shareholder or creditor of such company).

30. According to the FDIC website, Depositors remain still unpaid for the total amount of their deposits. (Ex. B).

31. Plaintiffs request that this Court enforce this law and order the FDIC to pay claimants in order of priority.

32. Plaintiffs believe that Universal's assets along with Defendant's restitution will allow depositors to profit from Universal's failure.

## DEMAND FUTILITY ALLEGATIONS

33. There is no current Board of Directors for Universal Federal. Accordingly, Plaintiff has not made any demand on the present Board to institute this action because such a demand would be a futile, wasteful and useless act. Indeed, Universal Federal was placed into receivership by the FDIC on June 27, 2002, and the FDIC terminated that receivership on November 15, 2007. Limited amounts of Universal Federal's assets were purchased by Chicago Community Bank. Plaintiffs believe the assets purchased by Chicago Community Bank do not include the claims for unpaid depositors and the depositors as mutual owners of Universal Federal.

34. Accordingly, any demand to institute action is futile.

## CLASS ALLEGATIONS

35. **The Proposed Class**. Plaintiffs bring this case for themselves and for the following class:

> all FDIC-certified claimants to Universal Federal restitution (including but not limited to depositors, creditors and depositors as mutual owners), excluding any defendant in any criminal action instituted as a result of the FDIC's takeover of Universal Federal Bank.

The Class satisfies all the prerequisites for certification under both Fed. R. Civ. P. 23.

36. **Numerosity**. The Class consists of dozens, if not hundreds of individuals and therefore is so numerous that joinder is impracticable.

37. **Typicality**. Plaintiffs' claims are typical of the claims of the Class because he and the Class sustained damages as a result of FDIC's failure to pay depositors and other FDIC-

certified claimants restitution ordered by the Northern District of Illinois (05-cr-0009).

38. **<u>Commonality and Predominance</u>**. There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including whether:

    (a) the FDIC is obligated adhere to 12 U.S.C. 1821(d)'s priority scheme;

    (b) the FDIC should re-open the receivership to compensate depositors and other creditors; and

    (c) any profits obtained by the FDIC should flow back to Universal Federal depositors.

All common questions are able to be resolved through the same factual occurrences as specifically and/or generally alleged herein.

Further, common issues predominate over individual issues.

39. **<u>Adequacy</u>**. Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff has no claims antagonistic to those of the Class. Plaintiff has retained competent and experienced counsel in complex class actions, securities, and corporate derivative litigation. Counsel is committed to the vigorous prosecution of this action.

40. **<u>Appropriateness as a Class Action</u>**. The prosecution of separate actions by the Plaintiffs and individual members of the Class against Defendant would create a risk of inconsistent or varying adjudications on the common issues of law and fact related to this action. A Class Action is superior to all other available methods for the fair and efficient adjudication of this controversy. The expense and burden of litigation would substantially impair the ability of the Class members to pursue individual cases in order to initiate their rights. In the absence of a class action, Defendant will retain the benefits of their wrongdoing.

## CAUSES OF ACTION

### COUNT I

**Declaratory Judgment that Depositors and Creditors Must Be Paid from Defendant Resnick's Restitution**

**(Derivative Claim on Behalf of Universal Federal via its Depositors and Direct Claim on Behalf of Universal Federal Depositors and Creditors)**

41. Plaintiffs hereby incorporate all of the foregoing paragraphs.

42. Defendant FDIC is required to follow the federal priority statute.

43. Under 12 U.S.C. §1821(d), the Financial Institutions Reform Recovery and Enforcement Act priority statute, the FDIC-certified claimants are entitled to the proceeds from Defendant Resnick's restitution and the United States' judgment against Defendant Resnick's bookie, Dominic Poeta, in the amounts and priorities described above.

44. Upon information and belief, the FDIC will not follow the statute and keep Defendant's restitution for itself.

45. There is an actual controversy regarding whether the depositors will be paid from Defendant Resnick's restitution.

### COUNT II

**Declaratory Judgment that the FDIC's Retention of the Resnick Settlement is a Violation of the Fifth Amendment Takings Clause and is an Unconstitutional Deprivation of Property (Derivative Claim on Behalf of Universal Federal and Direct Claim on Behalf of Depositors)**

46. Plaintiffs hereby incorporate all of the foregoing paragraphs.

47. Defendant FDIC's taking of Defendant Resnick's settlement and the judgment against Dominic Poeta is in violation of the Fifth Amendment takings clause.

48. Depositors have a private property interest in Defendant Resnick's restitution money and the Poeta judgment because they are the owners of the former Universal Federal.

**JURY DEMAND**

49. Plaintiffs demand a trial by jury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands definitive and permanent injunctive relief in his favor and in favor of the Class and against the Defendants as follows:

A. declaring this action is properly maintainable as a class action;

B. declaring that Defendant Resnick's restitution and Dominic Poeta's judgment should go to claimants;

C. imposing a constructive trust, in favor of Plaintiffs and the Class, upon any benefits improperly received by defendants as a result of their wrongful conduct;

D. awarding Plaintiffs and the Class pre- and post-judgment interest at the statutory rate;

E. awarding Plaintiffs the costs and disbursements of this action, including reasonable attorneys' and experts' fees;

F. granting such other and further equitable relief this Court may deem just and proper.

Date: February 5, 2010 **KRISLOV & ASSOCIATES, LTD**.

__s/Clinton A. Krislov_____
Clinton A. Krislov
Jeffrey M. Salas
20 North Wacker Drive
Suite 1350
Chicago, IL 60606
Tel: (312) 606-0500
Fax: (312) 606-0207

*Attorneys for Plaintiff*

## VERIFICATION

I, Donna Smithey, hereby declare:

1. I have read the verified derivative action allegations in the foregoing complaint against the FDIC and Adam Resnick.

2. I declare under penalty of perjury under the laws of the United States that the matters stated therein are true and correct to the best of my personal knowledge.

Executed on February 5, 2010.

_____
Donna Smithey

13