# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 10 C 816 | **DATE** | 11/1/2011 |
| **CASE TITLE** | Pavlik et al vs. FDIC et al | | |

**DOCKET ENTRY TEXT**

The Court grants in part and denies in part Plaintiffs' Petition for an Award of Attorney Fees [57]. The Court awards attorneys' fees to Krislov & Associates in the amount of $203,711.55, and denies Plaintiffs' counsel's request for costs and incentive awards. Status hearing set for 11/16/11 is stricken.

■[ For further details see text below.]  Notices mailed by Judicial staff.

## STATEMENT

Before the Court is Plaintiffs' Petition for an Award of Attorney Fees and request for costs and incentive awards. For the following reasons, the Court grants Plaintiffs' Petition in part and denies it in part.

### BACKGROUND

Plaintiffs Joseph Pavlik and Donna Smithey (the "Named Plaintiffs"), on behalf of themselves, Universal Federal, and a putative class of Federal Deposit Insurance Corporation ("FDIC")-certified Universal Federal claimants, filed a Complaint against Adam Resnick and the Federal Deposit Insurance Corporation, in its corporate receivership capacity, on February 5, 2010. (R. 1, Complaint.) In their complaint, Plaintiffs, represented by the law firm of Krislov & Associates, asked the Court to require the FDIC to 1) pay former depositors the remaining unpaid portions of their Universal Federal Bank deposits in excess of $100,000.00 from Defendant Resnick's *qui tam* settlement; 2) pay creditors pursuant to 12 U.S.C. § 1821's priority scheme; and 3) return all profits gained from Defendant Resnick's restitution to the bank's depositors, as mutual owners of the bank. (*Id.* ¶ 1.) According to the Complaint, all of the Plaintiffs were FDIC-certified claimants, meaning that the FDIC had already admitted their statutory rights to the money by the time they filed the complaint. (*Id.*)

| | Courtroom Deputy Initials: | KF |
|---|---|---|

Former Defendant Adam Resnick perpetrated a check-kiting scheme that led to the FDIC's takeover of Universal Bank, a mutually-owned savings bank located in Chicago, in 2002.[1] The FDIC insured Universal's deposits, and the FDIC served as the FDIC's receiver. On November 15, 2007, the FDIC terminated the Universal Federal receivership.

Mr. Resnick pled guilty to the check-kiting fraud, and Judge Wayne Anderson sentenced him to forty-two months in prison and imposed a restitution obligation of approximately $10 million. Before Mr. Resnick was indicted, he was employed as a consultant for a company called U.S. Pharmacy. During his employment there, he became aware of healthcare fraud and thereafter initiated a False Claims Act whistleblower case. While Mr. Resnick was in prison, the whistleblower case settled, resulting in a recovery to him individually in the amount of $5,402,687.95. After attorneys' fees and taxes, there was over $2,000,000 remaining. Pursuant to his restitution order, that amount was distributed to FDIC corporate (the "Restitution Proceeds"), since the FDIC had, by that time, closed its Universal Bank receivership.

The FDIC was unaware of Mr. Resnick's *qui tam* lawsuit, which was under seal until 2009, or his recovery under the settlement until it received a copy of the Complaint in this lawsuit. At the time Plaintiffs filed their Complaint, the FDIC had not yet received any of the Restitution Proceeds. The case was generally inactive during the first several months after Plaintiffs filed it. In early May 2010, the FDIC moved to dismiss the complaint for lack of ripeness because the FDIC had not yet received any of the Restitution Proceeds. Plaintiffs did not file a response to the FDIC's motion because the Court stayed the case for 60 days in late May and denied the FDIC's motion as moot. On September 1, the FDIC filed an answer and affirmative defenses, which Plaintiffs moved to strike. After the Court denied Plaintiffs' motion to strike the FDIC's answer and granted the motion to strike the affirmative defenses with leave to amend, the FDIC filed an amended answer on October 26, 2010. In early October, Plaintiffs served interrogatories (9) and requests for production of documents (10), to which the FDIC responded in November 2010.

As soon as the FDIC received the Restitution proceeds, the case moved into court-sponsored mediation. The Court held a settlement conference on January 20, 2011, which lasted approximately four hours. One week before the settlement conference, the FDIC sent Plaintiffs's counsel a letter containing a written offer and expressing its willingness to provide Plaintiffs with the relief they requested in the Complaint.

The FDIC states that by the end of the January 20, 2011 settlement conference, the parties had agreed on almost every significant term of the settlement. At the conference, the FDIC's counsel told the Court and the Plaintiffs' counsel that it had recently learned that the Internal Revenue Service ("IRS") was asserting a superior claim to a portion of the Restitution Proceeds.[2]

FDIC's counsel drafted a settlement agreement and delivered it to Plaintiffs' counsel on February 1, 2011. The FDIC asserts that, even though the parties had resolved all key issues surrounding the settlement, Plaintiffs' counsel unnecessarily delayed the settlement for months by raising new issues and trying to re-negotiate terms to which they had already agreed. Plaintiffs' counsel disagrees and states there were several outstanding issues that required negotiation after the FDIC delivered the first draft of the agreement. The parties participated in two additional settlement conferences with the Court–one on May 5, 2011, which lasted less than an hour, and another June 10, 2011, which lasted less than 30 minutes. The FDIC states that it provided all of the intermittent draft

---

[1] Plaintiffs voluntarily dismissed Mr. Resnick from the case on September 9, 2010. (R. 25.)

[2] On May 2, 2011, the IRS asserted a lien on the Restitution Funds.

settlement agreements to Plaintiffs' counsel. The parties executed a final settlement agreement on June 17, 2011.

The settlement agreement provides that the Court shall determine the amount of Plaintiffs' attorneys' fees and expenses in connection with this case. *See* R. 57-1, ¶ 5. Plaintiffs' counsel has a contingency fee agreement with the Named Plaintiffs for 33 1/3% plus costs.

## LEGAL STANDARD

### I. Attorneys' Fees

When, as here, the parties reach a settlement in a class action, the class's attorneys petition the court for compensation from the common fund created for the class's benefit. *Sutton v. Bernard*, 504 F.3d 688, 691 (7th Cir. 2007). Known as the "common fund doctrine," this payment scheme "is based on the equitable notion that those who have benefitted from litigation should share in its costs." *Id.* (citing *Skelton v. Gen. Motors Corp.*, 860 F.2d 250, 252 (7th Cir. 1988), *cert. denied*, 493 U.S. 810, 110 S.Ct. 53, 107 L.Ed.2d 22 (1989)). In these types of cases, the court "becomes the fiduciary for the fund's beneficiaries and must carefully monitor disbursement to the attorneys by scrutinizing the fee applications." *Skelton*, 860 F.2d at 253. In determining a reasonable fee, the Court "must balance the competing goals of fairly compensating attorneys for their services rendered on behalf of the class and of protecting the interests of the class members in the fund." *Skelton*, 860 F.2d at 258. To determine the reasonableness of the sought-after fee in a common fund case, "courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *Sutton*, 504 F.3d at 692; *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) (citing cases).

Although the Seventh Circuit has noted that such an estimation is "inherently conjectural," it has instructed district courts to consider the following benchmarks in its analysis: "(1) actual fee agreements; (2) data from large common fund cases where the parties negotiated the fees privately, and (3) bids and results from class counsel auction cases for insight into the fee levels attorneys in competition were willing to accept." *Sutton*, 504 F.3d at 692, n.2. The probability of success at the outset of the litigation is also relevant to this inquiry. *See Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 565 (7th Cir. 1994). District courts are not, however, to award fees in common fund cases based on the attorneys' "degree of success." *Id.* at 693 (holding that the "degree of success" standard in *Hensley v. Eckerhart*, 461 U.S. 424, 436, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) does not apply to cases where Congress has not authorized a fee award to the prevailing party).

Although there is "no one correct formula for determining a fee award," *Evans v. City of Evanston*, 941 F.2d 473, 477 (7th Cir. 1991), the "percentage-of-fund" method and the lodestar method are two generally-accepted approaches. *Florin*, 34 F.3d at 565. Pursuant to the lodestar method, the court calculates the fee by multiplying the time reasonably expended on the case by a reasonable hourly fee. *Florin*, 34 F.3d at 562 n.3. The court has discretion whether to use a percentage method or a lodestar method. *Id.* at 566.

### II. Incentive Awards

Incentive payments "are justified when necessary to induce individuals to become named representatives." *Synthroid*, 264 F.3d at 722. Therefore, "if such individuals 'would have stepped forward without the lure of an incentive award,' there is no need for such additional compensation[.].'" *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, No. 10 C 2278, 2011 2173726, at *2 (N.D. Ill. June 2, 2011) (citing *Synthroid*, 264 F.3d at 722). In deciding whether an incentive award is proper, and if so, in what amount, "relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted

from those actions, and the amount of time ad effort the plaintiff expended in pursuing the litigation." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998).

### III.   Costs

With respect to Plaintiffs' counsel's request for costs, the Seventh Circuit has explained that district courts must exercise their discretion to "disallow particular expenses that are unreasonable whether because excessive in amount or because they should not have been incurred at all." *Zabkowicz v. W. Bend Co., Div. of Dart Indus., Inc*., 789 F.2d 540, 553 (7th Cir. 1986) (quoting *Henry v. Webermeier*, 738 F.2d 188, 192 (7th Cir.1984)). When determining whether the level of detail in the request for costs is sufficient, courts should consider whether a paying client would be satisfied with the level of detail. *See Synthroid*, 264 F.3d at 722 ("If counsel submit bills with the level of detail that paying clients find satisfactory, a federal court should not require more.").

## ANALYSIS

### I.   36.5% of the Common Fund is Too High

In their Petition, Plaintiffs' counsel requests a fee award of $375,000, or 36.5% of the actual cash the FDIC will distribute to certified claimants under the parties' settlement agreement, which they claim is $1,026,829.30. (R. 57, Fee Petition at 2, 8.) They argue that the requested amount is within the "normal market range of 20%-50% of the common fund awarded in numerous cases of this size." (*Id.* 8-9).

Plaintiffs' counsel has a contingency fee agreement with the named plaintiffs for 33 1/3% plus costs. (*Id.* at 11.) Plaintiffs' counsel concedes that this amount is reasonable. (*Id.* at 10.) In 2010, following an examination of every federal class-action settlement in 2006 and 2007, one researcher found that, for cases with recovery ranges of the one at issue here (i.e., between $750,000.00 and $1,750,000), the mean fee award was 28.7% and the median fee award was 30%. *See* Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. EMPRICAL LEGAL STUD. 811, 839 (2010)). Additionally, an earlier study of data from 1993 to 2002 concluded that in cases of this size, the mean fee awarded based on published opinion data was 29.5% and the median fee was 30.0%. Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees in Class Action Settlements: An Empirical Study*, 1 J. EMPRICAL LEGAL STUD. 27, 73. The same study reported that based on Class Action Reports Data ("CAR") cases involving recoveries below $1.4 million, the median fee in nonsecurities cases was 30.9% and the median was 33.2%. *Id.* Plaintiffs' counsel's 36.5% request clearly exceeds these ranges. Their agreed-upon contingency fee of 33 1/3%, however, only slightly exceeds these ranges.

Based on the actual contingency fee agreements Plaintiffs' counsel signed with the two named plaintiffs, as well as the market data for fees in cases of this size, the Court finds that Plaintiffs' counsel are entitled to attorneys fees in the amount of 33 1/3% of the common fund.

### II.   The Common Fund Consists of the Residual Amount Available for Distribution to Universal's Depositors After the FDIC Makes the Statutorily-Required Distributions to Universal's Creditors

Plaintiffs' counsel argues that its fee award should be based on the FDIC's payout to all of the FDIC-certified claimants under the settlement agreement–in other words, the entire $1,026,829.30. They assert that the FDIC would not have made any of the payments they agreed to in the settlement had Plaintiffs' counsel not brought this action. In support of their argument, they rely on the FDIC's Answer to Plaintiffs' complaint, wherein the FDIC denied that it had to abide by 12 U.S.C. § 1821 and that it owed money to depositors.

The FDIC, on the other hand, asserts that Plaintiffs' counsel's award should be based only on the residual amount ($611,135.26) available for distribution to former depositors, including the two named plaintiffs, after the FDIC pays the distributions owed to Universal's proven creditors pursuant to the priority scheme in 12 U.S.C. § 1821(d). According to the FDIC, the issue of whether Universal's former depositors were entitled to this residual amount was the only real disputed issue in the litigation. The FDIC further argues that, if the case had proceeded to the class certification stage,[3] Plaintiffs' counsel would not have been able to demonstrate that it could adequately represent the interests of all of Universal's creditors, especially given that the largest creditor was the FDIC itself,[4] and they therefore would have represented only Universal's former depositors.

The Court agrees with the FDIC's arguments and finds that the "common fund" for purposes of determining Plaintiffs' counsel's fees is $611,135.26.[5] In addition to finding the FDIC's arguments persuasive, the Court also finds it relevant that the named plaintiffs, who agreed to the 33 1/3% contingency fee with Plaintiffs' counsel, were former depositors who will receive a proportionate share of recovery from the $611,135.26, and not the entire $ 1,026,829.30. This is so because, as the FDIC points out, it is statutorily required to distribute the Restitution Proceeds pursuant to the priority scheme in 12 U.S.C. § 1821 after deducting its own fees and Plaintiffs' counsel's fees, and then any remaining amounts after those distributions will go to former depositors, including the named plaintiffs. In other words, Plaintiffs' counsel's fees will be deducted from the residual amount available to the named plaintiffs and other former depositors, and will not reduce the amount going to Universal's proven creditors pursuant to 12 U.S.C. § 1821.[6] Awarding $375,000 to Plaintiffs' counsel would effectively revamp the contingency fee agreement from 33 1/3% to 61.4%–an undoubtedly perverse result. Therefore, the Court awards Plaintiffs' counsel, Krislov & Associates, attorneys' fees in the amount of $203,711.55, or 33 1/3% of $611,135.26.[7]

The Court does not need to resort to a lodestar calculation to reinforce the same conclusion. *See Florin*, 34 F.3d at 566 ("It bears reiterating here that we do not believe that the lodestar approach is so flawed that it should be abandoned . . . . We therefore restate the law of this circuit that in common fund cases, the decision whether to use a percentage method or a lodestar method remains in the discretion of the district court. We

---

[3] The FDIC asserts that case was never certified as a class action because the FDIC, within approximately one month after receiving the proceeds at issue, agreed to settle the case with Plaintiffs.

[4] Universal owed the FDIC $592,000 on its subrogated claims.

[5] Wayne S. Green, a Financial Manager in the FDIC's General Accounting Department, submitted a Declaration in support of the FDIC's Response to Plaintiffs' counsel's fee petition, in which he states that the net amount available to Universal's depositors after the § 1821(d) distributions is $611,135.26. (R. 61-1, Green Decl. at Tab 1.)

[6] As the FDIC pointed out in its response brief, the named Plaintiffs, whose combined interests equal less than four percent of total deposits, would stand to collect under $25,000 combined, excluding Plaintiffs' counsel's fee. If the Court were to award the $375,000 Plaintiffs' counsel seeks, the $611,000 available to former depositors, including Plaintiffs, would dwindle to $236,000. Under that factual scenario, Plaintiffs' combined distribution would equal only $9,400.

[7] The Court notes that this amount is just shy of 20% of Plaintiffs' suggested common fund amount ($1,026,829.30), a percentage Plaintiffs' counsel conceded was reasonable for cases of this size. *See* Petition at 8.

recognize here . . . that there are advantages to utilizing the percentage method in common fund cases because of its relative simplicity of administration."); *AT&T*, 2011 WL 2173746, at *11 (citing cases); *Will v. Gen. Dynamics Corp.*, No. 06-CV-698, 2010 WL 4818174, at *3 ("The use of a lodestar cross-check in a common fund case is unnecessary, arbitrary, and potentially counterproductive.").

### III.  Incentive Awards

Plaintiffs' counsel seeks incentive awards for the two named Plaintiffs in the amount of $5,000 each based on the Named Plaintiffs' involvement in the case–specifically, reviewing the complaint and settlement agreement, and Plaintiff Smithey's attendance at two settlement conferences. The FDIC objects to Plaintiffs' counsel's request on two grounds: 1) the settlement agreement does not permit incentive awards; and 2) incentive awards are unwarranted in this case because they were unnecessary to induce the Named Plaintiffs, whose combined interests entitle them to the largest share of the distribution, to participate in the litigation.

Plaintiffs' counsel fails to respond to the FDIC's argument that incentive awards are not permitted by the settlement agreement, nor do they offer any reason why they could not have negotiated incentive awards in connection with the settlement agreement. Moreover, the Court never certified a class in this case, and the Named Plaintiffs did not need incentive awards to induce them to become named plaintiffs. *In re Synthroid Mktg. Litig.*, 264 F.3d at 721 ("[i]ncentive awards are justified when necessary to induce individuals to become named representatives"). Collectively, their interests in Universal entitle them to the largest share of the distribution. This is unlike a large nationwide consumer class action where individual damages are likely to be relatively small—instead, the Named Plaintiffs stand to recover several thousands of dollars each, even after attorneys' fees are deducted. This is a classic example of a case where the Named Plaintiffs "would have stepped forward without the lure of an 'incentive award,'" and therefore "there is no need for such additional compensation." *Id.*

### IV.  The Court Denies Plaintiffs' Counsel's Request for Costs

Plaintiffs' counsel requests an award of costs in the amount of $3,417.99. In support of this request, Clinton A. Krislov submitted an affidavit with a list of the costs attached. (R. 57-2.) The list, however, is extremely vague and does not include any invoices or detailed descriptions of any of the purported expenses. There is a $31.00 expense for "Taxi," for example, but there is no information as to who took the taxi, when it was taken, or where it was taken. Additionally, there is a $301.00 charge for "Photocopies," but there is no information as to what was copied, whether it was done in-house or through a third party, or whether it was done for attorney convenience or for court copies. *Cf. Kulumani v. Blue Cross Blue Shield Ass'n*, 224 F.3d 681, 865 (photocopies made for attorney convenience are not recoverable under 28 U.S.C. § 1920(4)). A cost of $43.05 is claimed for "Transcript," but the list does not identify what transcript Plaintiffs' counsel ordered, when, or for what purpose. None of the entries list any dates or names of vendors. Additionally, Plaintiffs' counsel's request for "Online research" is not only vague and completely void of any substantive detail, but also must be denied because computerized legal research costs are construed as attorneys' fees and are not recoverable as "costs." *Haroco v. Am. Nat'l Bank & Trust of Chicago*, 38 F.3d 1428, 1440-41 (7th Cir. 2004); *Rogers v. Baxter Int'l Inc. et al.*, No. 04 C 6476, 2011 WL 941188 (N.D. Ill. Mar. 16, 2011) (denying request for legal research costs).

Because Plaintiffs' counsel fails to provide any detail from which the Court may conclude that the purported costs are for items that were reasonably necessary for use in this case and further fails to provide any invoices evidencing the claimed costs, the Court denies Plaintiffs' counsel's request for costs.

## CONCLUSION

For the reasons set forth above, the Court awards attorneys' fees to Krislov & Associates in the amount of $203,711.55, and denies Plaintiffs' counsel's request for costs and incentive awards.